# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CrossCountry Mortgage, Inc., | Case No. 1:19cv1021 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| Joseph Messina, et al., | |
| **Defendants** | **MEMORANDUM OPINION AND ORDER** |

Currently pending are the Motions of Defendants Joseph Messina and Luis Tamayo to Dismiss for Lack of Personal Jurisdiction. (Doc. Nos. 17, 20.) Plaintiff CrossCountry Mortgage, Inc., filed Briefs in Opposition (Doc. Nos. 31, 35), to which Defendants responded (Doc. Nos. 34, 36.) For the following reasons, Defendants' Motions are DENIED.

## I.  Procedural Background

On May 7, 2019, Plaintiff CrossCountry Mortgage, Inc. (hereinafter "Plaintiff" or "CrossCountry") filed a Complaint against Defendants Joseph Messina and Luis Tamayo, alleging claims for breach of contract, breach of fiduciary duties, conspiracy, conversion, and misappropriation of trade secrets under state and federal law. (Doc. No. 1.)

Defendant Joseph Messina filed an Answer on July 3, 2019. (Doc. No. 7.) The docket reflects that Plaintiff made several attempts to obtain service on Defendant Tamayo, ultimately requesting service by the Clerk by ordinary mail on August 27, 2019. (Doc. No. 14.) Copies of the summons and Complaint were thereafter mailed to Defendant Tamayo on August 28, 2019. (Doc. No. 15.)

On September 2 and 17, 2019, respectively, Defendants Messina and Tamayo filed Motions to Dismiss for Lack of Personal Jurisdiction. (Doc. Nos. 17, 20.) On those same dates, Defendants

also filed Motions to Stay Discovery pending rulings on the motions to dismiss. (Doc. Nos. 18, 21.) Plaintiff opposed each of Defendants' motions. (Doc. Nos. 19, 27, 31, 35.) Defendants filed a joint Reply in support of their Motions to Stay Discovery on October 3, 2019. (Doc. No. 32.)

On October 8, 2019, the Court issued an Order denying Defendants' Motions to Stay Discovery pending ruling on their Motions to Dismiss. (Doc. No. 33.)

Defendant Messina thereafter filed a Reply in support of his Motion to Dismiss on October 14, 2019 (Doc. No. 34), while Defendant Tamayo filed a Reply in support of his Motion on October 30, 2019. (Doc. No. 36.)

## II.    Factual Allegations

Plaintiff CrossCountry (hereinafter "Plaintiff" or "CrossCountry") alleges the following facts. Plaintiff is an Ohio corporation with its principal place of business in Brecksville, Ohio. (Doc. No. 1 at ¶ 7.) It is "a growing retail mortgage lender licensed in all 50 states that offers customers a range of mortgage loan services and products." (*Id*.)

In or about August 2016, Defendant Messina traveled to Plaintiff's headquarters in Ohio to interview for the position of branch manager of Plaintiff's Berwyn, Illinois office. (Doc. No. 31-1, Declaration of Jennifer Stracensky dated Oct. 2, 2019 (hereinafter "Stracensky Decl. I") at ¶ 2). In September 2016, Plaintiff hired Messina for the position. (*Id*. at ¶ 3.) That same month, Plaintiff hired Defendant Tamayo as the sales manager of the Berwyn, Illinois branch. (Doc. No. 35-1, Declaration of Jennifer Stracensky dated Oct. 17, 2019 (hereinafter "Stracensky Decl. II") at ¶ 2.) Both Defendants Messina and Tamayo are lifelong residents of the State of Illinois. *See* Doc. No. 17-2, Declaration of Joseph Messina (hereinafter "Messina Decl.") at ¶ 2; Doc. No. 20-2, Declaration of Luis Tamayo (hereinafter "Tamayo Decl.") at ¶ 2.

On September 30, 2016, Defendants Messina and Tamayo each entered into Employment Agreements with Plaintiff.[1]  (Doc. No. 1 at ¶ 11.)  Plaintiff alleges that it "negotiated and executed the Employment Agreements at its corporate headquarters in Brecksville, Ohio."  (*Id.* at ¶ 12.) Defendants Messina and Tamayo aver that they executed their respective Agreements in Illinois. (Messina Decl. at ¶ 4; Tamayo Decl. at ¶ 4.)

In their Employment Agreements, Defendants acknowledge that Plaintiff invested time, money, and other resources to develop and maintain relationships with its current and prospective employees and customers, and to develop and compile confidential information and trade secrets. (Doc. No. 1 at ¶ 13, citing Messina Agreement §5.3, Tamayo Agreement § 4.3).   Plaintiff alleges that, as CrossCountry loan officers, both Messina and Tamayo had access to this confidential trade secret information.  (*Id.*)

To protect this information, the Employment Agreements restrict the use and disclosure of Plaintiff's "Confidential Material," as that term is defined in the Agreement.  (Doc. No. 1 at ¶ 16, citing Messina Agreement §5.1(b), Tamayo Agreement § 4.1(b)).  The Employment Agreements also strictly prohibit Defendants from soliciting or recruiting Plaintiff's employees for employment with anyone else, including other mortgage lenders, for a period of two years following cessation of their employment with CrossCountry.  (*Id.* at ¶ 17, citing Messina Agreement §5.3, Tamayo Agreement §5.3).   In addition, the Employment Agreements prohibit Defendants from soliciting current or prospective customers for a period of two years after their termination, resignation, and/or separation from employment.  (*Id.* at ¶ 19, citing Messina Agreement §5.3, Tamayo Agreement §4.3.)

---

[1] Copies of these Agreements are attached to the Complaint as Exhibits A and B.  (Doc. Nos. 1-1, 1-2.)

Each Employment Agreement contains a choice of law provision providing that "this Agreement shall be governed by and construed in accordance with the substantive laws of Federal law and the laws of the State of Ohio." (Messina Agreement at § 6.7; Tamayo Agreement at § 5.7). Additionally, the Agreements contain arbitration clauses that provide, in relevant part, that "[t]o the maximum extent permissible under applicable law, any and all hearings or other proceedings shall be held at a place in Cuyahoga County, Ohio that is mutually agreeable to the Parties." (Messina Agreement at § 6.18; Tamayo Agreement at § 5.19.)

Plaintiff alleges that, during the term of his employment, Defendant Messina reported directly to CrossCountry's Chief Executive Officer ("CEO") Ronald Leonhardt, Jr. and its Chief Production Officer ("CPO") Craig Montgomery, both of whom are based in Ohio. (Stracensky Decl. I at ¶ 4.) Plaintiff asserts that Leonhardt and Montgomery "regularly communicated with Mr. Messina – from Ohio – regarding the strategy and performance of Mr. Messina's branch, and regularly gave him direction in that regard." (*Id*. at ¶ 5.) Plaintiff further alleges as follows:

> During at least a portion of his employment at CrossCountry, Mr. Messina regularly communicated with CrossCountry personnel in Ohio for purposes of processing mortgage loans. More specifically, for at least a portion of Mr. Messina's employment, the CrossCountry underwriters and closers for loans originated by Mr. Messina and his branch were based in CrossCountry's Ohio headquarters. When Mr. Messina originated a loan for a customer, he was required to submit paperwork regarding the loan to a CrossCountry underwriter, who would evaluate the loan and decide whether to approve it. After approval, a CrossCountry closer would prepare all of the loan documents and send them to Mr. Messina and his branch to be executed. Although some loans originated by Mr. Messina were processed by underwriters and closers stationed outside of Ohio, those underwriters and closers all reported to CrossCountry's corporate office and, as Mr. Messina was aware, those individuals were required to escalate any issues regarding loans originated by Mr. Messina to their superiors in Ohio. Ultimately, CrossCountry would fund the mortgage loan for the customer whose loan was originated by Mr. Messina, using CrossCountry funds in Ohio.

(Stracensky Decl. I at ¶ 10.)  In addition, according to Plaintiff, Messina periodically aired commercials for the Berwyn branch office on local radio stations.  (*Id*. at ¶ 13.)  Plaintiff alleges Messina worked with CrossCountry marketing employees in Ohio on those commercials and submitted invoices for all such commercial air time to Plaintiff's accounts payable department in Ohio.  (*Id*.)

Moreover, Plaintiff claims that both Defendants Messina and Tamayo regularly submitted invoices for business expenses to Plaintiff's Ohio headquarters for payment or reimbursement which were approved by CrossCountry personnel in Ohio and paid from CrossCountry funds in Ohio.  (*Id*. at ¶ 7; Stracensky Decl. II at ¶5.)  Defendants were both compensated from CrossCountry in Ohio, "from funds located in Ohio."  (Stracensky Decl. I at ¶ 6; Stracensky Decl. II at 4.)  Plaintiff also "paid the rent for Mr. Messina's Berwyn branch office from Ohio and using Ohio funds," and provided the physical assets (such as the computer hardware, IT equipment, and telephones) from Ohio.  (Stracensky Decl. I at ¶ 8; Stracensky Decl. II at ¶ 6.)

On December 27, 2018, Defendant Messina sent an email to Plaintiff's CEO, Mr. Leonhardt, asking for increases in compensation for himself and Defendant Tamayo's brothers, Jose and Juan Tamayo.  (Stracensky Decl. I at ¶ 14.)  Therein, Messina asked Mr. Leonhardt to double the salaries of himself, Jose Tamayo, and Juan Tamayo from $10,000 per month to $20,000 per month each.  (*Id*.)  He also asked for a $10,000 bonus "draw" to be paid to each of them.  (*Id*.)  Based on documentation attached to Plaintiff's Brief in Opposition to Defendant Tamayo's Motion to Dismiss, it appears that Defendant Messina, Defendant Tamayo and at least one of Mr. Tamayo's brothers spoke with Mr. Leonhardt by telephone during the first week of January 2019 regarding Messina's email.  (Doc. No. 35-1 at PageID# 418-419; Stracensky Decl. II at ¶ 10.)  In asking for this increase in compensation,

Messina advised Mr. Leonhardt that he was "very confident that 2019 is going to be our best year yet." (Stracensky Decl. I at ¶ 14.)  Plaintiff granted Messina's requests.  (*Id.*)

Plaintiff alleges that, very shortly thereafter (in early 2019), Defendants Messina and Tamayo began working with competitor Parkside Lending to "poach CrossCountry's entire Berwyn branch." (Doc. No. 1 at ¶ 27.)  At the same time, in January and February 2019, Messina submitted invoices to Plaintiff's accounts payable department in Ohio for payment of at least $59,500.  (Stracensky Decl. I at ¶ 15.)  Plaintiff alleges that Messina represented that these invoices were for local radio air time and on-air talent to advertise Plaintiff's Berwyn, Illinois branch.  (*Id.*)  Plaintiff approved and paid the invoices from its Ohio headquarters.  (*Id.*)  Plaintiff alleges that Messina "used the resulting paid-for air time to advertise for Parkside Lending rather than CrossCountry."  (*Id.*)  Plaintiff also asserts that Messina and Tamayo conspired together to obtain Messina's increase in compensation (including his bonus) "under false pretenses," knowing that they were leaving CrossCountry for Parkside Lending.  (Stracensky Decl. II at ¶ 11.)

Plaintiff alleges that, during early 2019 and while still employed by CrossCountry, Defendants Messina and Tamayo began wrongfully recruiting other Berwyn employees to join them and, in fact, recruited "at least thirteen other CrossCountry employees to quit CrossCountry and join Parkside in a mass, orchestrated exodus on March 12, 2019."  (Doc. No. 1 at ¶ 28.)  Plaintiff further asserts that, before leaving CrossCountry on March 12, 2019, Defendants misappropriated Plaintiff's Confidential Materials, including its customer information.  (*Id.* at ¶ 30.)  In particular, Plaintiff alleges that it has "identified at least nineteen loan customers whose loans were being processed by

CrossCountry, or had previously closed at CrossCountry, that have been diverted by [Defendants] Messina and Tamayo to Parkside."[2]  (*Id.*)

On April 1, 2019, Plaintiff sent a cease and desist letter to Defendant Messina and Parkside asking that they cease and desist soliciting Plaintiff's customers and employees, and "immediately account for the use of any of CrossCountry's confidential information, including without limitation, by identifying all customer information taken from Cross Country." (*Id.* at ¶ 32.)  Plaintiff claims that Defendants Messina and Tamayo are nonetheless "continuing to process the loans of diverted CrossCountry customers for Parkside, even after receiving CrossCountry's cease-and-desist letter, further confirming that their misconduct is knowing and intentional."  (*Id.*)

## III.    Analysis

Plaintiff bears the burden of proving personal jurisdiction.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  If a court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion."  *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005).  "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary."  *Burnshire Dev., LLC v. Cliffs Reduced iron Corp.*, 198 Fed. Appx. 425, 434 (6th Cir. 2006).

---

[2] As discussed *infra*, Plaintiff asserts that the Confidential Information misappropriated by Defendants Messina and Tamayo was maintained on Plaintiff's computer database, known as "Encompass."  (Stracensky Decl. I at ¶ 11; Stracensky Decl. II at ¶ 8.)  Plaintiff claims this database "is maintained and managed by CrossCountry IT personnel in Ohio," and was accessible only through a specific employee ID and password provided by CrossCountry. (*Id.*)

When a district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). To defeat such a motion, a plaintiff need only make a *prima facie* showing of jurisdiction, which can be met by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002). A court disposing of a Rule 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal but may consider a defendant's undisputed factual assertions. *See CompuServe*, 89 F.3d at 1262; *Theunissen*, 935 F.2d at 1459; *NTCH-West Tenn, Inc., v. ZTE Corp.*, 761 Fed. Appx. 485, 488 (6th Cir. Jan. 16, 2019) (citing *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 153 (6th Cir. 1997)). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Id. See also Kerry Steel, Inc.,* 106 F.3d at 149.

"In a diversity case, a federal court can exercise personal jurisdiction over a defendant if jurisdiction is (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Tharo Systems, Inc. v. Cab Producktechnik GMBH & Co., KG*, 196 Fed. Appx. 366 (6th Cir. 2006). Because "Ohio's long-arm statute is not coterminous with federal constitutional limits," to establish a *prima facie* case of personal jurisdiction, a plaintiff must demonstrate that (1) Ohio's long-arm statute has been satisfied and (2) exercising jurisdiction would comport with Due Process. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012) (quoting *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp.*

*Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008)); *Kauffman Racing Equip., LLC v. Roberts*, 126 Ohio St.3d 81, 930 N.E.2d 784, 790 (Ohio 2010)).

Here, Defendants argue that this matter must be dismissed because (1) the requirements of Ohio's Long Arm Statute are not met; and (2) the exercise of jurisdiction over does not comport with the Due Process Clause. The Court will address Defendants' arguments separately, below.

### A.    Ohio's Long Arm Statute

The relevant provisions of Ohio's Long Arm Statute provide as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

***

 (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

***

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state . . .

Ohio Rev. Code § 2307.382(A)(1), (4), & (6). Furthermore, according to Ohio Rev. Code § 2307.382(C), "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." The Sixth Circuit has held that this Section "requires a 'proximate cause' relationship" between a plaintiff's claim and the defendant's conduct in Ohio, which is a "tighter fit" than the "but for" approach under the Due Process Clause. *See Brunner v. Hampson*, 441 F.3d 457, 465-466 (6th Cir. 2006). *See also Burnshire*

*Development, LLC*, 198 Fed. Appx. at 432, fn 2; *Malone v. Stanley Black & Decker, Inc.*, 393 F.Supp.3d 721, 725 (N.D. Ohio 2019).

Here, Plaintiff argues Subsections (A)(1), (4) and (6) are satisfied, with respect to both Defendants Messina and Tamayo.[3]  With regard to Ohio Rev. Code § 2307.382(A)(1), Plaintiff argues Defendants "transacted business" in Ohio because both Defendants Messina and Tamayo (1) had and continue to have ongoing confidentiality and restrictive covenant obligations to Plaintiff, an Ohio company; (2) received their compensation and benefits from Plaintiff in Ohio; and (3) regularly received and routinely accessed Plaintiff's confidential information from its computer database that was maintained and managed in Ohio.  (Doc. No. 31 at p. 11; Doc. No. 35 at p. 10.)  In addition, as further support for its argument that Defendant Messina's contacts with Plaintiff satisfy § 2307.382(A)(1), Plaintiff notes that Messina (1) admitted traveling to Ohio to interview with CrossCountry and discuss his prospective employment; (2) regularly communicated with and received instructions from Mr. Leonhardt and Mr. Montgomery in Ohio; and (3) used underwriters and closers at Plaintiff's headquarters to approve and close mortgage loans.  (Doc. No. 31 at p. 11.)

Defendants argue § 2307.382(A)(1) is not satisfied because "everything [they] did was from [their] Illinois business office, and not in Ohio."  (Doc. No. 17-1 at p. 7; Doc. No. 20-1 at p. 8.) Defendants maintain that the mere fact that they entered into a contract with an Ohio corporation and

---

[3] Plaintiff also argues that Defendants consented to personal jurisdiction in this Court by signing Employment Agreements that contained arbitration forum selection clauses.  (Doc. No. 31 at pp. 6-8; Doc. No. 35 at pp. 5-8.)  *See e..g.* Messina Employment Agreement § 6.18 ("To the maximum extent permissible under applicable law, any and all [arbitration] hearings or other proceedings shall be held at a place in Cuyahoga County, Ohio that is mutually agreeable to the Parties.") Defendants disagree, arguing that the case law cited by Plaintiff is distinguishable because several of the claims at issue in this action are specifically exempted from arbitration under Defendants' Employment Agreements.  (Doc. No. 34 at pp. 2-7.)  The Court need not reach this issue.  As discussed *infra*, even without consideration of the Agreements' arbitration forum selection clauses, the Court finds Plaintiff has made a *prima facie* showing of personal jurisdiction under Ohio's Long Arm Statute and the Due Process Clause.

received payments from that entity is not enough to establish jurisdiction under this provision, particularly given the fact that Defendants signed their Employment Agreements in Illinois; conducted business with Plaintiff from their Illinois offices; conducted business with other Illinois citizens; used Illinois resources; and developed business in Illinois for Plaintiff's branch office in Illinois. (Doc. No. 17-1 at p. 9; Doc. No. 20-1 at p. 8.)

The Ohio Supreme Court has stated that Ohio Rev. Code § 2307.382(A)(1) is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Muzzin v. Brooks*, 859 N.E.2d 584, 588 (Ohio Ct. App. 8th Dist. 2006); *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,* 559 N.E.2d 477, 480 (Ohio 1990). *See also Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 160 (S.D. Ohio 2012). As that court has explained, the term "'[t]ransact,' as defined by Black's Law Dictionary (5th ed. 1979) 1341, 'means to prosecute negotiations; to carry on business; to have dealings [ ]. The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion[ ].'" *Kentucky Oakes Mall Co*., 559 N.E.2d at 480. *See also International Paper Co. v. Goldschmidt,* 872 F.Supp.2d 624, 629 (S.D. Ohio 2012); *The RightThing, LLC v. Brown*, 2009 WL 249694 at * 3 (N.D. Ohio Feb. 2, 2009).

Interpreting this provision, federal courts within this Circuit have found that "while the mere existence of a contract may not be enough to confer personal jurisdiction [under Section (A)(1)], a contract may qualify as transacting business under Ohio's long-arm statute, particularly when it imposes continuing obligations on the parties affecting the State of Ohio." *Tarkett USA, Inc v. Harnix Corp*., 2017 WL 2443139 at * 3 (N.D. Ohio June 6, 2017). *See also Alloy Bellows & Precision*

*Welding, Inc. v. Cole*, 2015 WL 6964579 at * 3 (N.D. Ohio Nov. 10, 2015). Moreover, the Ohio Supreme Court has noted that "personal jurisdiction does not require physical presence in the forum state." *Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 1994).

With respect to Defendant Messina, the Court finds Plaintiff has alleged sufficient contacts with the State of Ohio to satisfy the requirements of Ohio Rev. Code § 2307.382(A)(1). Messina travelled to Plaintiff's headquarters in Ohio to interview for the position of branch manager and discuss the terms of his prospective employment. (Stracensky Decl. I at ¶ 2.) He executed an Employment Agreement with an Ohio corporation, knowing that that Agreement imposed continuing obligations on him to (among other things) maintain the confidentiality of Plaintiff's Confidential Information. (Doc. No. 1 at ¶¶ 11, 13-16.) In addition, during his employment, Messina regularly communicated with Mr. Leonhardt and Mr. Montgomery in Ohio regarding the strategy and performance of Messina's branch office and, further, regularly communicated with CrossCountry personnel in Ohio for purposes of processing mortgage loans. (Stracensky Decl. I at ¶¶ 5, 10.) Plaintiff also alleges that Messina routinely submitted invoices for business expenses to its Ohio headquarters, which were approved by CrossCountry personnel in Ohio and paid with CrossCountry funds located in Ohio. (*Id.* at ¶ 7.) Messina also allegedly accessed confidential information from Plaintiff's computer database, which is maintained and managed by CrossCountry IT personnel in Ohio. (*Id.* at ¶ 11.) Lastly, Plaintiff states that Messina's compensation was paid from CrossCountry in Ohio from funds located in Ohio. (*Id.* at ¶ 6.)

The Court finds the above allegations are sufficient to demonstrate that Defendant Messina "transacted business" in Ohio for purposes of Ohio Rev. Code § 2307.382(A)(1). Other courts have reached the same conclusion under similar circumstances. *See, e.g., Tarkett USA, Inc.*, 2017 WL

2443139 at * 3 (finding § 2307.382(A)(1) met where non-resident former employee traveled to Ohio, received payments from Ohio, regularly communicated with and received instruction from Ohio, and negotiated his Separation Agreement, in part, in Ohio); *Dayton Superior Corp.*, 288 F.R.D. at 166 (finding § 2307.382(A)(1) met where non-resident former employee applied to work at an Ohio company and signed various agreements knowing that employer was located in Ohio, received employer's confidential information which had been located and managed in Ohio, communicated with individuals in Ohio, admitted traveling at least once to Ohio, and received his compensation and benefits from Ohio); *The RightThing, LLC*, 2009 WL 249694 at * 3 (finding § 2307.382(A)(1) met where non-resident former employee visited Ohio on occasion, regularly received reports and proposals from Ohio, and accessed information stored on employer's Ohio-based data servers).

Whether Plaintiff has established that Defendant Tamayo has sufficient contacts with the State of Ohio for purposes of § 2307.382(A)(1) is a closer call. Unlike Defendant Messina, there is no allegation that Defendant Tamayo visited Plaintiff's headquarters in Ohio. Nor has Plaintiff submitted any Declarations or other evidence indicating that Tamayo regularly received instruction from CrossCountry personnel in Ohio. Plaintiff does, however, allege that Tamayo knowingly executed an Employment Agreement with CrossCountry that subjected him to continuing confidentiality, non-competition, and non-solicitation obligations to Plaintiff. (Doc. No. 1 at ¶¶ 11, 13-20.) Plaintiff further alleges that, like Defendant Messina, Defendant Tamayo accessed Plaintiff's confidential information through its computer database, which is maintained and managed by CrossCountry personnel in Ohio. (Stracensky Decl. II at ¶ 8.) Plaintiff also asserts that Tamayo regularly submitted invoices for business expenses to CrossCountry headquarters in Ohio and received his compensation and benefits from Plaintiff in Ohio. (*Id.* at ¶¶ 4, 5.)

13

On balance, and given the Ohio Supreme Court's broad construction of the term "transacting business," the Court finds Plaintiff has established sufficient contacts between Defendant Tamayo and Ohio for purposes of § 2307.382(A)(1). As noted above, Tamayo knowingly contracted with an Ohio corporation and agreed to be bound by several provisions establishing continuing and ongoing obligations to CrossCountry. In addition, during the term of his employment, Tamayo allegedly accessed Plaintiff's confidential information from its Ohio computer database, repeatedly reached out to Plaintiff's Ohio personnel for payment of his various business expenses, and received his compensation and benefits from CrossCountry in Ohio. Although Tamayo did not physically visit the State of Ohio, the Ohio Supreme Court has found that "personal jurisdiction does not require physical presence in the forum state." *Goldstein*, 638 N.E.2d at 544. Taken as a whole, the Court finds Plaintiff has sufficiently demonstrated that Defendant Tamayo "transacted business" in Ohio for purposes of § 2307.382(A)(1).

The Court further finds there is sufficient evidence to satisfy Ohio's Long Arm Statute under Section (A)(6), with respect to both Defendants Messina and Tamayo. As set forth *supra*, Section 2307.382(A)(6) provides for jurisdiction over a person who "caus[es] tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.382(A)(6). Like Section (A)(1), Section (A)(6) has been interpreted broadly. *See Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012); *Pay(q)r, LLC v. Sibble*, 2015 WL 9583034 at * 5 (N.D. Ohio Dec. 31, 2015).

Here, Plaintiff alleges that Defendants Messina and Tamayo committed tortious acts outside Ohio that caused injury within this State. Specifically, Plaintiff asserts Defendants secretly conspired

to join a competitor and accessed and used Plaintiff's confidential customer information from its Ohio computer database to further their plans. (Doc. No. 1 at ¶ 4, 27, 30.) Plaintiff also maintains that Defendants essentially stole CrossCountry's funds by "caus[ing] themselves to be paid bonuses by CrossCountry, and incur[ring] expenses for CrossCountry that were outside the ordinary course of business" and "actually for Parkside's benefit." (*Id*. at ¶ 29.) Plaintiff further asserts that Defendants Messina and Tamayo agreed that any breach of their respective confidentiality or restrictive convenants would cause irreparable injury to CrossCountry in Ohio.[4] (*Id*. at ¶ 22.)

Thus, Plaintiff has come forward with evidence that Defendants misused Plaintiff's confidential information and converted Plaintiff's property, both of which are tortious acts. Moreover, the Court finds Defendants could reasonably have expected that injury would occur in Ohio by taking the confidential information of their Ohio-based employer. Faced with similar facts, courts within this Circuit have found the requirements of § 2307.382(A)(6) to be met. *See e.g., Tarkett USA, Inc.,* 2017 WL 2443139 at * 4 (finding § 2307.382(A)(6) met where non-resident former employee breached his non-compete and non-disclosure agreements with Ohio-based employer); *Alloy Bellows & Precision Welding, Inc*., 2015 WL 6964579 at * 4 (finding § 2307.382(A)(6) met where non-resident former employee removed employer's confidential trade secrets from its Ohio computer system); *Dayton Superior Corp*., 288 F.R.D. at 167 (finding § 2307.382(A)(6) met where

---

[4] The Complaint cites Defendants' Employment Agreements, which provide as follows: "[Cross Country] and Employee recognize and acknowledge that in the event of any breach of any provision of this Article [i.e., Protected Information and Restrictive Covenants], irreparable harm will be suffered by [CrossCountry] and that any remedy available at law will be inadequate and [CrossCountry] and Employee do, therefore, agree that in such event [CrossCountry] shall be entitled to injunctive relief in any court of competent jurisdiction against Employee and against any other person or entity involved in or connected with such breach, without necessity of posting any bond, cash or security against/for Employee or any individual or entity involved in or connected with such breach, which rights shall be in addition to such rights as [CrossCountry] may have for damages and in addition to such other remedies as the law or equity may provide." (Doc. No. 1 at ¶ 22, citing Messina Agreement § 5.5, Tamayo Agreement § 4.5).

non-resident former employee misappropriated employers' trade secrets outside of Ohio); *Coast to Coast Health Care Services, Inc. v. Meyerhoffer*, 2012 WL 169963 at * 3 (S.D. Ohio Jan. 19, 2012) (finding § 2307.382(A)(6) met where non-resident former employee misappropriated trade secrets and noting "if Meyerhoffer secretly conspired to start a competitor company and utilized Coast to Coast's national client lists, prospective client lists, and independent contractor physician provider lists and also began contacting clients of Coast to Coast, she should have reasonably expected that Dr. Bolton's Ohio business would be damaged."); *Safety Today, Inc. v. Roy*, 2012 WL 2374984 at * 2 (S.D. Ohio June 22, 2012) (finding § 2307.382(A)(6) met where non-resident former employee took the customer lists and confidential information of their Ohio-based employer). Accordingly, the Court finds that Plaintiff has sufficiently alleged that the requirements of § 2307.382(A)(6) are met with respect to both Defendants Messina and Tamayo.[5]

As noted above, to demonstrate that the requirements of Ohio's Long Arm Statute are met, Plaintiff must also show that its causes of action "arise from acts enumerated in this section," which the Sixth Circuit has interpreted as requiring a showing that a defendant's conduct in Ohio is the "proximate cause" of the plaintiff's causes of action. *See* Ohio Rev. Code § 2307.382(C); *Brunner*,

---

[5] The cases relied upon by Defendants to the contrary are distinguishable. Specifically, Defendants' reliance on *University of Louisville v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 5015513 (W.D. Ky. Nov. 2, 2017) and *V-Soft Consulting Group v. Logic Corp.*, 2017 WL 1228402 (W.D. Ky. March 31, 2017) is misplaced because both cases involve application of Kentucky's (rather than Ohio's) Long Arm Statute. Moreover, neither case involved claims arising from the alleged breach of an employment agreement. While *Buckeye Check Cashing of Arizona, Inc. v. Lang*, 2007 WL 641824 (S.D. Ohio Feb. 23, 2007) does involve the application of Ohio's Long Arm Statute in the context of an alleged breach of an employment agreement, the Court finds that case to be distinguishable as well. In *Buckeye Check Cashing*, plaintiff alleged that defendants (both of whom were Arizona residents) breached the non-competition provisions of their respective employment agreements by accepting employment with an Arizona competitor. Based on defendants' minimal connections to Ohio, the court found personal jurisdiction did not exist under §§ 2307.382(A)(1), (3) or (4). Here, however, the Court finds that the exercise of jurisdiction is appropriate under § 2307.382(A)(6) based on Plaintiff's allegations that Defendants breached their employment agreements by repeatedly accessing and misusing confidential information obtained from the plaintiff's Ohio-based computer system. Thus, the nature and quantity of Defendants' alleged contacts with Ohio herein are substantially greater than that at issue in *Buckeye Check Cashing*.

16

441 F.3d at 466. *See also United States for use and benefit of South Shore Electric, Inc. v. P and E Construction, LLC*, 2019 WL 1205447 at * 3 (N.D. Ohio March 14, 2019).

The Court finds Plaintiffs have sufficiently alleged that its causes of action "arise from" Defendants' conduct in this State. In the Complaint, Plaintiff alleges claims for (1) breach of contract, (2) breach of fiduciary duties; (3) conspiracy to breach fiduciary duties; (4) conversion; and (5) misappropriation of trade secrets under Ohio and federal law. With the exception of the conversion claim, each of Plaintiff's claims are based, in part, on the allegation that Defendants Messina and Tamayo improperly used Plaintiff's confidential customer information to divert CrossCountry's customers and business to Parkside. Plaintiff alleges that Defendants accomplished this by accessing the confidential information stored on Plaintiff's computer data base, which it alleges is maintained and managed by CrossCountry IT personnel in Ohio. (Stracensky Decl. I at ¶ 11; Stracensky Decl. II at ¶ 8.) Based on these allegations, the Court finds Plaintiff's breach of contract, breach of fiduciary duties, conspiracy, and trade secrets claims "arise from" Defendants' alleged conduct in Ohio.

With respect to Plaintiff's conversion claim, Plaintiff asserts Defendants "wrongfully used their positions at CrossCountry to wrongfully pay themselves bonuses using CrossCountry's money." (Doc. No. 1 at ¶ 52.) As noted *supra*, Plaintiff asserts that, on December 27, 2018, Defendant Messina sent an email to Mr. Leonhardt in Ohio, in which he requested bonuses for himself and Defendant Tamayo's brothers. (Stracensky Decl. I at ¶ 14; Stracensky Decl. II at ¶ 10.) Plaintiff further claims that, in early January 2019, Defendants Messina and Tamayo (and one of Mr. Tamayo's brothers) spoke to Mr. Leonhardt by telephone reiterating their request for a bonus. (Stracensky Decl. II at ¶ 10.) Based in part on Defendants' representations during that telephone call, Plaintiff granted the

bonus requests. (*Id.*) Plaintiff alleges Defendants obtained this money "under false pretenses, knowing that both they and the entire branch were leaving CrossCountry for Parkside Lending." (*Id.*)

Based on these allegations, the Court finds Plaintiff's conversion claim "arises from" Defendants' alleged conduct in Ohio. Defendants allegedly reached out to Mr. Leonhardt in Ohio (via email and phone by Messina, and via phone only by Tamayo) to request bonuses, knowing that they were leaving CrossCountry and with the intent to use the bonus money for the benefit of Parkside. Although Defendant Tamayo was not copied on the December 27, 2018 email and apparently did not request a bonus for himself (contrary to the allegations in the Complaint), CrossCountry alleges that Tamayo conspired with Messina to obtain this money from CrossCountry under false pretenses in order to aid their transition to Parkside. (Stracensky Decl. II at ¶ 10.) The Court finds these allegations sufficient to satisfy Ohio Rev. Code § 2307.382(C) with respect to both Defendants.

Accordingly, and for all the reasons set forth above, the Court finds Plaintiff has established that this Court has jurisdiction over Defendants Messina and Tamayo under Ohio Rev. Code § 2307.382(A)(1) and (A)(6).[6]

### B.    Due Process

Plaintiff must also, however, demonstrate that the exercise of personal jurisdiction over Defendants Messina and Tamayo would comport with the Due Process Clause. As the Sixth Circuit has explained, "there are two kinds of personal jurisdiction within the Due Process inquiry," i.e., general jurisdiction and specific jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012).

---

[6] Because the Court finds it has jurisdiction under §§ 2307.382(A)(1) and (6), it need not reach Plaintiff's argument that jurisdiction exists under § 2307.382(A)(4).

18

General jurisdiction requires a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, whereas specific jurisdiction exposes the defendant to suit in the forum state only on claims that "arise out of or relate to" a defendant's contacts with the forum. *Kerry Steel, Inc.*, 106 F.3d at 149 (citing *Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414–415 & fns. 8–10, 104 S.Ct. 1868, 1872 & fns. 8–10, 80 L.Ed.2d 404 (1984) and *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989)).

Here, Defendants argue that Ohio does not recognize the concept of general jurisdiction. Plaintiff does not address or oppose Defendants' arguments regarding general jurisdiction and, instead, limits its argument to the issue of specific personal jurisdiction. Thus, the Court will assume, for purposes of the instant Motion, that general jurisdiction does not exist and will limit its analysis to the question of whether Plaintiff has made a *prima facie* showing of specific jurisdiction over Defendants Messina and Tamayo.

In making this determination, "the crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). *See also CompuServe*, 89 F.3d at 1263; *Theunissen*, 935 F.2d at 1459. The Sixth Circuit has established the following three-part test for determining whether specific personal jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action

must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc.*, 89 F.3d at 1263.  *See also Calphalon v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968).

### 1.    Purposeful Availment

The question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is "the *sine qua non* for *in personam* jurisdiction." *Mohasco Indus.*, 401 F.2d at 381–82.  *See also Calphalon*, 228 F.3d at 721 ("The purposeful availment prong . . . is essential to a finding of personal jurisdiction.")  The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)); *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994).  Courts require purposeful availment to insure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *Burger King Corp.*, 471 U.S. at 475 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)).

Defendants argue that they did not purposefully avail themselves of the privilege of conducting business in Ohio, noting that Plaintiff has failed to demonstrate any connection between Defendants' business activities and this State.  (Doc No. 17-1 at p. 12-14, Doc. No. 20-1 at p. 12.)

20

Defendants further maintain that the mere fact that they signed contracts with an Ohio corporation and were then paid by that entity is not sufficient to establish purposeful availment. (*Id.*) They maintain that they do not have the type of regular or continuous contacts with Ohio that would support a finding of personal jurisdiction, particularly given that all of Defendants' alleged conduct at issue in the Complaint was committed in Illinois. (Doc. No. 34 at pp. 13-14.) In sum, Defendants argue jurisdiction is not appropriate because "Plaintiff recruited and hired defendants who each hold an Illinois license as Illinois-based mortgage loan originators to generate mortgage loans in Illinois from an Oak Brook, Illinois location, pursuant to Illinois laws and with Illinois borrowers, and alleges in the Complaint that defendant used the Illinois borrower data to compete against it in Illinois." (*Id.* at p. 15.)

Plaintiff argues Defendants' contacts with Ohio satisfy the purposeful availment prong because both Messina and Tamayo (1) knew they were establishing an employment relationship with an Ohio company; (2) were paid from Ohio; (3) used resources (such as marketing materials and a customer information database) provided from Ohio; and (4) continue to be bound by the non-competition, non-solicitation, and confidentiality obligations set forth in their respective Employment Agreements. (Doc. No. 31 at p. 16, Doc. No. 35 at p. 16.) Moreover, Plaintiff notes that both Messina and Tamayo "reached into Ohio to steal confidential information from CrossCountry's Ohio-based databases, and communicated with an Ohio citizen, CrossCountry's CEO, for the purpose of causing tortious injury (the conversion of funds) to CrossCountry, an Ohio resident." (Doc. No. 35 at p. 16.)

For the following reasons, the Court finds that Plaintiff has demonstrated that Defendants purposefully availed themselves of the privilege of acting in Ohio. The Supreme Court has "emphasized that parties who 'reach out beyond one state and create continuing relationships and

obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473. Here, Plaintiff has come forward with evidence that Defendants Messina and Tamayo "reached out" to Ohio when they applied for positions with an Ohio corporation and executed Employment Agreements that included continuing and ongoing non-competition, non-solicitation, and confidentiality obligations. In addition, Plaintiff has submitted evidence that Defendant Messina routinely communicated with and took instruction from Mr. Leonhardt and Mr. Montgomery (both of whom were based in Ohio) and traveled to Ohio on at least one occasion. (Stracensky Decl. I at ¶¶ 2, 4, 5.) Defendant Tamayo also regularly communicated with Plaintiff in Ohio when he submitted requests for approval of business expenses to Plaintiff's Ohio headquarters. (Stracensky Decl. II at ¶ 5.) Moreover, both Defendants allegedly accessed Plaintiff's confidential information from its Ohio-based computer system and misused that information in order to divert Plaintiff's customers to Parkside Lending.[7] (Stracensky Decl. I at ¶ 11; Stracensky Decl. II at ¶ 8.)

Several courts in this Circuit have found the purposeful availment prong satisfied under similar circumstances. For example, in *The Rightthing, LLC, supra*, the Court found the purposeful availment prong met where the defendants actively used plaintiff's Ohio-based computer system to misappropriate plaintiff's trade secrets:

> With regard to the [purposeful availment] prong, [Defendant] Brown argues that she simply represented [Plaintiff] RTI in California and that her association with Ohio was attenuated because it just so happened that RTI's principal place of business was in Ohio. The Court disagrees. Notwithstanding the disputed Agreement in this case, RTI has alleged that Brown removed files, that allegedly contained trade secrets, from RTI's Ohio-based database. In doing so, Brown, reached the State of Ohio through her

---

[7] In addition, while not dispositive, the Court notes that the Employment Agreements at issue contain a choice of law provision that "this Agreement shall be governed by and construed in accordance with the substantive laws of Federal law and the laws of the State of Ohio." (Messina Agreement at § 6.7; Tamayo Agreement at § 5.7).

computer wires, removed the files from RTI's computer system, and returned them to California. Furthermore, Brown regularly received files from Ohio and accessed RTI's Ohio-based computer system.

*The Rightthing, Inc*., 2009 WL 249694 at * 5. *See also Allow Bellows & Precision Welding, Inc.,* 2015 WL 6964579 at * 5 (finding purposeful availment prong met where former employee "reached in to Ohio by contracting in Ohio, the substance of which created continuing obligations not to compete or disclose confidential of Plaintiff" and subsequently "reached into Ohio to copy confidential files, allegedly violating the terms of the Agreements"); *International Paper Co*, 872 F.Supp.2d at 632 (finding this prong met where former employee entered into a confidentiality agreement with employer, communicated with Ohio-based employees, and maintained access to a password protected website containing employer's confidential information).

For this reason, Defendants' reliance on *Calphalon v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) is misplaced. In that case, the Sixth Circuit found the defendant (a sales representative for Calphalon cookware products) lacked sufficient minimum contacts with Ohio to permit the exercise of personal jurisdiction by an Ohio court under the due process clause. *Calphalon*, 228 F.3d at 723. There, defendant executed one-year manufacturer's representative agreements with Calphalon in 1996 and 1997 to promote the sale of Calphalon's products and keep Calphalon informed of market conditions. Defendant's sales territories were Minnesota, Iowa, North Dakota, South Dakota, and Nebraska. During the term of the agreements, defendant made two visits to Ohio and communicated with Calphalon in Ohio via telephone, fax, and mail. The Sixth Circuit found no purposeful availment because defendant's performance of the agreement was "not focused on exploiting any market for cookware in the State of Ohio." *Id*. at 723.

In the instant case, Defendants reached into Ohio by contracting with an Ohio corporation and agreeing to be bound by the continuing non-competition, non-solicitation, and confidentiality obligations set forth in their respective Employment Agreements. Moreover, both Defendants directed activity into Ohio by communicating with Plaintiff in Ohio, accessing Plaintiff's confidential information from its Ohio computer database, and allegedly misappropriating Plaintiff's confidential information to divert Plaintiff's customers to Parkside. Thus, the Court finds the quality and nature of Defendants' contacts with Plaintiff in Ohio are distinguishable from those of the defendant in *Calphalon* and support a finding of purposeful availment. *See also Dayton Superior*, 288 F.R.D. at 168 (distinguishing *Calphalon* by noting that "in this case, the allegations, among others, involve misappropriation of trade secrets from an Ohio company"); *Alloy Bellows & Precision Welding*, 2015 WL 6964579 at * 5 ("The instant case can be distinguished from *Calphalon* as Cole reached into Ohio by contracting in Ohio," agreeing not to disclose confidential information, and subsequently "reach[ing] into an Ohio-based computer system to extract the confidential information").

Accordingly, and for all the reasons set forth above, the Court finds Plaintiff has demonstrated that Defendants purposefully availed themselves of the privilege of acting in Ohio or causing a consequence in this State.

### 2. Arising From

The second factor in evaluating specific jurisdiction requires that a cause of action "arise from" the defendant's activities in the forum state. *Mohasco Indus., Inc.*, 401 F.2d at 381. This requirement is satisfied when "the cause of action, of whatever type, ha[s] a substantial connection with the defendant's in-state activities." *Kerry Steel, Inc.*, 106 F.3d at 152 (quotation marks omitted). "'Only when the operative facts of the controversy are not related to the defendant's contact with the

state can it be said that the cause of action does not arise from that contract.'" *Calphalon Corp.*, 228 F.3d at 723–24 (quoting *Mohasco Indus., Inc.*, 401 F.2d at 384 n.29). The Sixth Circuit has also stated that a "lenient standard . . . applies when evaluating the arising from criterion." *Bird v. Parsons,* 289 F.3d 865, 875 (6th Cir. 2002).

The Court finds Plaintiff has satisfied the "arising from" requirement for establishing specific jurisdiction. In this case, Plaintiff has alleged (among other things) that Defendants improperly used Plaintiff's confidential customer information to divert CrossCountry's customers and business to Parkside. Plaintiff alleges that Defendants accomplished this by accessing the confidential information stored on Plaintiff's computer data base, which it alleges is maintained and managed by CrossCountry IT personnel in Ohio. (Stracensky Decl. I at ¶ 11; Stracensky Decl. II at ¶ 8.) The Court finds that this alleged conduct is directly related to Plaintiff's breach of contract, breach of fiduciary duty, conspiracy, and misappropriation claims and, therefore, satisfies the "arising from" requirement.

The Court further finds that Plaintiff's conversion claim "arises from" Defendants' alleged conduct in Ohio. Defendants allegedly reached out to Mr. Leonhardt in Ohio (via email and phone by Messina, and via phone only by Tamayo) to request bonuses, knowing that they were leaving CrossCountry and with the intent to use the bonus money for the benefit of Parkside. CrossCountry alleges that Defendants conspired to obtain this money from CrossCountry under false pretenses in order to aid their transition to Parkside. (Stracensky Decl. II at ¶ 10.) The Court finds that this alleged conduct is directly related to Plaintiff's conversion claim and is sufficient to satisfy the "arising from" requirement with respect to that claim.

Accordingly, the Court finds Plaintiff's claims "arise out of" Defendants' alleged contacts with the State of Ohio.

### 3.    Reasonableness

The third, and final, factor requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Mohasco Indus., Inc.*, 401 F.2d at 381. The exercise of jurisdiction is presumed to be reasonable when the plaintiff satisfies the first two prongs of the *Mohasco* analysis. *CompuServe*, 89 F.3d at 1268. "[W]hen considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant, (2) the interest of the forum state, (3) the plaintiff's interest in obtaining relief, and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.

Defendants argue that it would impose a "significant burden" on them to defend this action in Ohio given the fact that they both live in and conduct their business exclusively in Illinois. (Doc. No. 17-1 at p. 17; Doc. No. 20-1 at p. 16.)  They further assert that Ohio's interest is "nonexistent." (*Id.*)

The Court finds this is not the "unusual case" in which the exercise of personal jurisdiction is unreasonable. *Mohasco,* 401 F.2d at 384.  Defendants provide no specific facts or other particular support for their contention that litigating this matter in Ohio would be substantially burdensome. Moreover, the Court finds that Ohio has a strong interest in ensuring the enforcement of its laws and enforcing contracts entered into by Ohio-based businesses. *See Tarkett USA*, 2017 WL 2443139 at * 6; *International Paper*, 872 F.Supp.2d at 633.  While it may be somewhat burdensome for Defendants to defend suit in Ohio, when they entered into Employment Agreements with an Ohio

corporation, they knew that they were "making a connection with Ohio, and presumably hoped that connection would work to [their] benefit." *CompuServe*, 89 F.3d at 1268.

Therefore, the Court finds the exercise of personal jurisdiction over Defendants is reasonable.

## IV.    Conclusion

Accordingly, and for all the reasons set forth above, Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (Doc. Nos. 17, 20) are DENIED.

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date:  October 31, 2019